## SAMSON TIRE & RUBBER CO. v. EGGLESTON. *

### No. 6028.

Circuit Court of Appeals, Fifth Circuit.

Dec. 16, 1930.

F. W. Davies, of Birmingham, Ala. (Coleman, Coleman, Spain & Stewart, of Birmingham, Ala., of counsel), for appellant.

William S. Pritchard, Geo. W. Yancey, and Al. G. Rives, all of Birmingham, Ala. (London, Yancey & Brower and John D. Higgins, all of Birmingham, Ala., of counsel), for appellee.

Before BRYAN and WALKER, Circuit Judges, and HOLMES, District Judge.

HOLMES, District Judge.

The appellant, Samson Tire & Rubber Company, filed its petition in the court below to reclaim from the trustee in bankruptcy a number of automobile tires and tubes in the possession of the O. J. Umphrey Oil Company at the time the latter was adjudicated a bankrupt. The petition was first heard and denied by the referee, whose order was later reviewed and upheld by the District Judge.

The claimant, who was a manufacturer of automobile tires and tubes, entered into a written contract with the bankrupt, who was a dealer in such merchandise in the city of Birmingham, for the alleged storage and distribution of its products. The written instrument was termed a warehousing agreement, and, according to the appellant, the delivery of the goods in controversy under it constituted a bailment. The contention of appellee is that in truth the real transaction between the parties amounted to a sale.

The agreement is long, complicated, and in some of its provisions contradictory of others. In it the appellant is denominated as the company, and the O. J. Umphrey Oil Company as the dealer. After reciting that the company desires to have its products adequately stocked in the city of Birmingham, for the purpose of providing suitable distribution in said city and in certain surrounding territory, and that the dealer desires to arrange with the company for the storage and distribution of the same, the contract provides for the consignment to itself of such quantities of tires and tubes as the company

*Rehearing denied February 21, 1931.

pleases to ship, for which the dealer shall furnish adequate and safe storage space within his place of business in said city, without expense to the company, said space to be so arranged that the tires and tubes shall be kept separate from the other merchandise. It further provides that the title and possession shall remain in the company, except as to such property as may be withdrawn by the dealer for sale to himself; that the dealer shall be responsible for the safe-keeping of said stock, except as to damage by fire, this, notwithstanding that title and possession remain in the company; that the company shall have access to the same; that the dealer shall ship from said stock for the company's account to such customers as the company designates tires and tubes within certain territorial and credit limits, but it is specifically agreed that any shipments made by the dealer in excess of such established limits, and for which he does not have written authority from the company, shall be strictly for his own account and upon his own responsibility; that all trucking, hauling, and packing in the said city shall be furnished by the dealer without expense to the company; that the dealer shall not accept products, returned by customers, for the company's account without special authority of the latter; that the dealer may purchase tires and tubes out of the stock upon conditions specified; that tires and tubes purchased by the dealer out of the stock shall be charged to himself at list prices; that invoices for tires and tubes furnished the dealer shall be payable upon the 10th of the month next following the month in which shipment is made, but a cash discount of 2 per cent. is allowed for earlier payments; that the company may decline to furnish merchandise to the dealer except for cash; that the company will grant the dealer a trade discount upon his net purchases from stock; that as full compensation for all services rendered by the dealer the company shall allow him a credit of 5 per cent. upon stock shipped from storage by him to customers of the company other than to himself; that the dealer agrees to carry insurance on the stock purchased by him sufficient to cover any indebtedness due the company; that the dealer is not authorized to act as agent for the company in any respect, this, notwithstanding that as warehouseman or commission merchant the dealer is required by other provisions of the agreement to perform specific duties for the company; that all indebtedness of the dealer to the company shall be due and

payable immediately after the dealer removes or sells his business, sustains fire loss, becomes insolvent or bankrupt, is sued or attached by process of law, or suspends payment of any indebtedness whatever, and that upon the termination of the agreement the dealer will deliver to the company, f. o. b. the railroad station within said city, all stock on hand free of any handling charges whatever. The dealer agrees to report to the company daily shipments of merchandise to and receipts of merchandise from, the customers of the company, neither of which last two things was done.

There was a separate latticed compartment in the store of the bankrupt where the stock should have been kept, under the agreement, but some of the articles were on display in other parts of the store. With the stock shipment came an ownership sign which was posted in the stockroom, but exactly when it was posted or how long it remained is not shown; evidently not long, for it clearly appears that on the date the receiver was appointed another similar one was written by hand and posted, reading: "Tires and Tubes in this stock are the property of the Samson Tire and Rubber Company."

In operating under the contract the bankrupt had exclusive custody of the property and exercised sole and complete ownership over the proceeds. While the contract provided for access to the stockroom by the company, it never availed itself of the privilege. The property was displayed and sold by the bankrupt as its own, and the proceeds of the sale were not required to be kept separately and applied to the payment of the debt due the claimant. The money was deposited to the credit of the bankrupt and treated in the same way as the proceeds of other merchandise. The written instrument relied upon by appellant was not recorded in the state of Alabama, and creditors of the bankrupt had no notice, actual or constructive, of its existence until after the bankruptcy.

Under the agreement the bankrupt had the right to deal in automobile tires and tubes within the city in the stock held in storage, and the company agreed to sell the same to him out of said stock upon the basis of the company's local distributor's list prices effective on the date of the respective deliveries, such prices being subject to revision by the company without notice, but, in the event of a reduction in the list price, the company agreed to rebate the dealer by merchandise credit the difference between the prices in-

voiced and the revised prices, as per the revised list. The dealer had no one to consult but himself in order to make the purchases, and was under no obligation to return the specific tires and tubes, provided he paid the company the list prices of the same on or before the 10th of the next month. As soon as a purchase was made, it was only necessary for him to charge himself with the list price.

█ Whether the transaction was a bailment or a sale will not be determined solely by the words employed in the written instrument. Its meaning being doubtful, the court will look also to the acts and circumstances of the parties, especially to the construction which they themselves put upon the contract in executing it.

█ Construing the entire contract in the light of the circumstances of the parties and their acts under it, we find no obligation of the dealer to return the specific property in the same or in an altered form, no duty as agent to sell it and account for the proceeds as a trust fund, but, on the contrary, the immediate right to buy at a fixed price, payable at a future date with a 2 per cent. discount for cash, property delivered into his actual possession, for which he is made responsible to the extent of the purchase price, except as to loss by fire, and which he is permitted to display for sale and sell with his other merchandise and apply the proceeds to his own use. The transaction was not a bona fide bailment, but, so far as creditors are concerned, constituted a sale transferring both title and possession. Laflin & R. Powder Co. v. Burkhardt, 97 U. S. 110, 24 L. Ed. 973; Reliance Shoe Co. v. Manly (C. C. A.) 25 F. (2d) 381.

The conclusion is inescapable that the alleged warehousing agreement was a subterfuge, attempting to disguise the real transaction between the parties, and constructively fraudulent as to creditors.

█ The real characteristics of a sale, or their legal effects, are not changed by calling it a bailment. The court will look to the purpose of the contract rather than to the name given it. Hervey et al. v. R. I. Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003.

█ The written instrument was evidently intended to provide security to the claimant for the collection of the debt due it by the bankrupt, and, not having been recorded, it is void as to creditors under the statutes of the state of Alabama. See sections 6868, 6898, and 8032 of the 1923 Code of Alabama.

Being void as to creditors, it is void as to the trustee in bankruptcy who is vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, and also with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. Section 47a(2) of the Bankruptcy Act, 11 USCA § 75(a)(2).

The decree of the court below is affirmed.