**KENNEDY THEATER TICKET SERVICE et al.**

v.

**TICKETRON, INC.**

Civ. A. No. 71–2206.

United States District Court,
E. D. Pennsylvania.
April 18, 1972.

M. L. Chucas, Pelino, Wasserstrom, Chucas & Monteverde, Philadelphia, Pa., for plaintiffs.

E. Brooks Keffer, Jr., Hart, Childs, Hepburn, Ross & Putnan, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is an anti-trust cause of action under the Sherman Act and Clayton Act, as amended by the Robinson-Patman Act, alleging in three counts that (1) defendant entered into a conspiracy in restraint of trade in violation of 15 U. S.C. § 1; (2) defendant with its co-conspirators attempted to monopolize and did in fact monopolize trade or commerce regarding the resale of admission tickets to various sports and entertainment events in violation of 15 U.S.C. § 2; and (3) defendant discriminated in price in the resale of admission tickets in violation of 15 U.S.C. § 13(a), (d), (e) and (f). Before the Court is defendant's motion, pursuant to Rules 12(b) (1) and 12(b) (6) of the Federal Rules of Civil Procedure, to dismiss Count III of the complaint.

Briefly stated, the alleged facts pertinent to this motion are as follows: Plaintiffs are licensed, independent ticket brokers, who have brought this suit on their own behalf and on behalf of all others similarly situated.

The defendant is a corporation engaged in the sale of tickets for all types of reserved seat attractions where an admission fee is charged. The system, as operated by defendant, is a computer-control communications enterprise, comprised of remote terminals capable of issuing tickets for one or more events and of transmitting information to defendant's central computer facilities. The remote terminal operation is capable of displaying information as to the availability of seat reservations for events and issuing tickets. Once a ticket is purchased in this manner, the system removes the selected seats from the computer's memory bank of unsold seats and issues a printed card in the form of a ticket. Defendant has entered into contracts with a number of franchisees who have agreed to the installation and operation of remote terminal units to sell admission tickets. In addition, defendant has entered into contracts with a number of professional organizations engaged in the business of promoting various entertainment events.

Under the agreements between defendant and the franchisees, plaintiffs allege that defendant receives certain benefits which are not generally available to plaintiffs. Plaintiffs charge that under the contracts defendant is granted a discount in purchase price on each ticket sold; defendant is permitted to return unsold tickets; defendant is granted extensive allotments; defendant is permitted to use the name of the subscriber, the events, facilities and the performers, artists and other persons associated with the event in promoting and advertising the event; in advertising, the promoter informs the public that tickets are available through defendant's outlets; and, finally, defendant is permitted to collect a service charge for each ticket sold, in addition to receiving compensation for each sale from the subscriber. In so far as these benefits are not equally available to the independent ticket brokers, plaintiffs allege that such benefits constitute discrimination in violation of subsections (a), (d), (e) and (f) of Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a), (d), (e) and (f), (the Act).[1]

---

1. The applicable provisions of Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13 (a), (d), (e) and (f), provide as follows:

"(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price

In Loren Specialty Mfg. Co. v. Clark Mfg. Co., 241 F.Supp. 493 (N.D.Ill. 1965), aff'd 360 F.2d 913 (7th Cir. 1966), cert. denied, 385 U.S. 957, 87 S. Ct. 392, 17 L.Ed.2d 303 (1966), the Court enumerated the essential jurisdictional elements of the Act, stating:

" 'The jurisdictional determination turns on these basic statutory requirements: a discrimination must arise from (A) consummated contemporaneous sales transactions (B) by the same seller to different purchasers, (C) involve "commodities" of (D) "like grade and quality," and (E) occur "in commerce." ' " 241 F.Supp. at 498.[2]

Defendant moves to dismiss Count III of the complaint on the following grounds: (1) Defendant is not a "purchaser" within the meaning of subsections 2(a) and 2(e) of the Act, 15 U.S.C. § 13(a)

between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: Provided, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: Provided, however, That the Federal Trade Commission may, after due investigation and hearing to all interested parties, fix and establish quantity limits, and revise the same as it finds necessary, as to particular commodities or classes of commodities, where it finds that available purchasers in greater quantities are so few as to render differentials on account thereof unjustly discriminatory or promotive of monopoly in any line of commerce; and the foregoing shall then not be construed to permit differentials based on differences in quantities greater than those so fixed and established: And provided further, That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade: And provided further, That nothing herein contained shall prevent price changes from time to time wherein response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned.

\*     \*     \*     \*     \*

"(d) It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

"(e) It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

"(f) It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section."

2. In *Loren Specialty Manufacturing Co.*, *supra*, the above quote of the Court was from Rowe, Price Discrimination Under the Robinson-Patman Act 45 (1962).

(e), or a "customer" within the meaning of subsection 2(d) of the Act, 15 U.S.C. § 13(d) and (2) the tickets are not "commodities" within the meaning of subsections 2(a), 2(d) and 2(e) of the Act, 15 U.S.C. § 13(a), (d), and (e).

### I.

■ The initial issue, which faces the Court, is whether defendant is a "purchaser" within the meaning of Sections 2(a) and 2(e) of the Robinson-Patman Act, 15 U.S.C. § 13(a) and (e), or a "customer" within the meaning of Section 2(d) of the Act, 15 U.S.C. § 13(d). Initially, it should be noted that the term "customer" in Section 2(d) and the term "purchaser" in Section 2(a) and (e) are synonymous, American News Co. v. F. T. C., 300 F.2d 104, 109 (2d Cir.), cert. denied, 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962), and the term "purchaser" has been defined as meaning " * * * simply one who purchases, a buyer, a vendee", Sorrentino v. Glen-Gery Shale Brick Corp., 46 F.Supp. 709, 712 (E.D.Pa.1942). In the cases dealing with the issue whether a sale has occurred within the meaning of the Act, the courts have generally looked to the indicia of sales law and transfer of title. *See e. g.* Students Book Co. v. Washington Law Book Co., 98 U.S.App.D.C. 49, 232 F.2d 49 (1955), cert. denied, 350 U. S. 988, 76 S.Ct. 474, 100 L.Ed. 854 (1956) (upholding jury finding of consignment); Loren Specialty Mfg. Co. v. Clark Mfg. Co., *supra. But c. f.* Simpson v. Union Oil Co., 377 U.S. 13, 84 S. Ct. 1051, 12 L.Ed.2d 98 (1964).[3] Defendant argues that the transactions involved constitute a consignment in that defendant is acting as an agent on behalf of principal; defendant obtains no title to the admission tickets; defendant remits to his principals all money collected; and no consideration passes from defendant to his principals upon the transfer of the right to create and sell the admission tickets. Defendant further argues that since it is a consignment agent on behalf of its principals, it is not a purchaser or customer within the purview of Section 2 of the Act, and Count III of the complaint, therefore, should be dismissed.

■ We must reject defendant's contentions at this time for the following reason: The Court is by no means bound by the characterization of the transaction as presented by defendant, for it is substance rather than form which governs the issue whether defendant is a purchaser within the meaning of the Act. Reines Distributors, Inc. v. Admiral Corp., 256 F.Supp. 581 (S.D.N.Y.1966). Since plaintiffs have not had adequate time to complete discovery to meet defendant's contentions on this issue, we conclude that defendant's motion is premature at this time.

### II.

The second issue before the Court is whether the right to create and sell admission tickets for entertainment attractions is a "commodity" within the meaning of subsections 2(a), 2(d) and 2(e) of the Act. Plaintiff, however, argues that it is not the right to sell the tickets which is here in question, but the sale of the tickets themselves. In making our determination of this question, we will, for the purpose of this motion, accept plaintiff's characterization of the issue. The question, therefore, is whether an admission ticket for entertainment transactions is a "commodity" within the meaning of Subsections 2(a), 2(d) and 2(e) of the Act.

Admission tickets have been uniformly defined as revocable licenses issued as convenient evidence of the right of the holder to be admitted to a particular place of entertainment at a specific time and date for the privilege of being en-

3. In *Simpson*, the Supreme Court stated: "Thus a consignment is not allowed to be used as a cloak to avoid § 3 of the Clayton Act." 377 U.S. at 18, 84 S.Ct. at 1055.

In reaching our decision on this issue, we have not decided whether the holding in Simpson applies as well to Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13.

tertained. *See* Marrone v. Washington Jockey Club, 227 U.S. 633, 637, 33 S.Ct. 401, 57 L.Ed. 679 (1913); Jordan v. Concho Theatres, Inc., 160 S.W.2d 275, 276 (Tex.Civ.App.1941); Collister v. Hayman, 183 N.Y. 250, 76 N.E. 20, 20–21 (1905). In Taylor v. Cohn, 47 Or. 538, 84 P. 388 (1906), the Court therein held:

> "A ticket to a theater or other place of amusement is a mere license, revocable at the pleasure of the theatrical manager. It is true it constitutes a contract between the proprietor and the purchaser of the ticket, and whatever contractual duties grow out of such relation the proprietor is bound to perform or respond in damages for breach of his contract, but he is not liable in an action for trespass or in tort." 84 P. at 388.

Since this question is one of first impression under the Robinson-Patman Act, we must now look to the history and applicable standards under the Act to determine whether an admission ticket, representing a memorandum of an agreement creating a revocable license, constitutes a "commodity" within its meaning.

In reviewing the history of the Act, it is clear that the term "commodity" refers exclusively to items of trade in a tangible form. In 1957, Representative Celler, then Chairman of the House Judiciary Committee, proposed to amend Subsection 2(a) to expand the term "commodities" to include " * * * services other than professional services rendered by independent contractors." [H.R. 8277, 85th Cong., 1st Sess., 103 Cong.Rec. 9898 (1957)] on the ground that Subsection 2(a) covered "only tangible commodities and not services". [H.R. 607, 85th Cong., 1st Sess. 66–67 (1957)]. In rejecting this proposed amendment, Congress manifested a clear intent to restrict the definition of the term "commodity" to tangible goods. Further, Representative Patman, in discussing the definition of the term, stated:

> "In its broadest sense, the word 'commodity' might possibly include items of trade other than those in tangible form—for example, advertising, insurance, brokerage service, and similar items. However, the word is ordinarily used in the commercial sense to designate any movable or tangible thing that is produced or used as the subject of barter. This is the definition of the word 'commodity' used in the application of the Robinson-Patman Act." Patman, Complete Guide to the Robinson-Patman Act 33 (1963).

The legislative history of the act in this context was trenchantly summarized in *LaSalle Street Press, Inc. v. McCormick & Henderson, Inc.*, 293 F.Supp. 1004 (N.D.Ill.1968), where the Court concluded:

> " * * * the legislative history of what is now section 13(a) clearly indicates that the coverage of the law was limited to tangible articles and products, and was not meant to include all elements of commerce such as intangibles or services." 293 F.Supp. at 1005–1006.

■ Plaintiff argues that the admission ticket itself constitutes a tangible product within the purview of the Act. As we have previously mentioned, a ticket is a memorandum of an agreement creating a revocable license to a particular seat at a particular time. When confronted with an item with both tangible and intangible aspects, the Court in *Tri-State Broadcasting Co. v. U. P. I.*, 369 F.2d 268 (5th Cir. 1966), established the following test:

> "Virtually no transfer of an intangible in the nature of a service, right, or privilege can be accomplished without the incidental involvement of tangibles, and we conclude that in such circumstances the dominant nature of the transaction must control in determining whether it falls within the provisions of the Act." 369 F.2d at 270.

See also LaSalle Street Press, Inc. v. McCormick and Henderson, Inc., supra, 293 F.Supp. at 1005; Gaylord Shops, Inc. v. Pittsburgh Miracle Mile Town and Country Shopping Center, Inc., 219 F.Supp. 400 (W.D.Pa.1963).[4] In the instant case, the dominant purpose of the transaction is not merely the purchase of the tangible admission ticket, but rather the contractual right to occupy a seat at an entertainment attraction. The ticket itself is merely incidental to the transaction, representing a tangible memorandum of the contract. We, therefore, conclude that since the intangible aspects of the admission tickets are dominant over the tangible aspects thereof, an admission ticket does not constitute a "commodity" within the meaning of the Act.[5]

Plaintiff argues that the primary concern of Congress in the enactment of 15 U.S.C. § 13 was for the promotion of competition in the resale market, and the Act specifically applies to commodities for resale. By this rationale, plaintiff seeks to distinguish the cases cited heretofore and argues further that since the tickets were bought for resale, they lie within the ambit of the Act. Plaintiff's argument begs the question presented in this motion, for before we can determine whether there is a discrimination in sales of commodities for resale, we must determine whether there is a commodity. Since we have found that an admission ticket does not constitute a commodity within the meaning of the Act, we find no merit in plaintiff's argument.

Accordingly, the defendant's motion to dismiss Count III of the complaint will be granted.

---

4. The courts have held that the following do not constitute a "commodity" within the meaning of the Act: news information supplied by a news service company, Tri-State Broadcasting Co. v. United Press International, supra; sale of advertising, Columbia Broadcasting System, Inc. v. Amana Refrigeration, Inc., 295 F.2d 375 (7th Cir. 1961); construction contract for the sale of bricks, wherein the challenged bid covered labor and other material in addition to bricks; Gen. Shale Products Corp. v. Struck Construction Co., 132 F.2d 425 (6th Cir. 1942); bus transportation fares, Fleetway, Inc. v. Pub. Serv. Interstate Trans. Co., 72 F.2d 761 (3d Cir. 1935) (decision under original Section 2 of the Clayton Act); a patent license, LaSalle Street Press, Inc. v. McCormick & Henderson, Inc., supra; a lease of real estate, Gaylord Shops, Inc. v. Pittsburgh Miracle Mile Town & Country Shopping Center, Inc., supra; the licensing of motion picture films, County Theatre Co. v. Paramount Film Distributing Corp., 146 F.Supp. 933 (E.D. Pa.1956); contract for the loan of money secured by a real estate mortgage. United States v. Investors Diversified Services, Inc., 102 F.Supp. 645 (D.Minn.1951).

5. In an analogous situation, the Court of Appeals for the Third Circuit rejected the argument that bus transportation fares constituted a "commodity" within the meaning of Section 2 of the Clayton Act. In Fleetway, Inc. v. Pub. Serv. Interstate Transp. Co., supra, the Court stated:

"The learned trial judge construed this section to apply to 'commodities' and not to transportation of passengers by motor busses. This section prevents discrimination in price between different purchasers of commodities which are sold for use, consumption, or resale within the United States, etc. This clearly refers to a commodity such as merchandise, and has no reference to transportation of passengers by busses, for discrimination in price between purchasers of commodities on account of differences in grade, quality, or quantity or a discrimination which makes only due allowance for difference in the cost of selling or transportation is not prohibited. It would be a strange and strained construction that would apply this language to transportation of passengers by busses."