394 F.Supp. 384 (1975)
SCM CORPORATION
v.
XEROX CORPORATION.
Civ. No. 15807.
United States District Court, D. Connecticut.
May 19, 1975.
*385 Stephen Rackow Kaye, New York City, for plaintiff.
Stanley Robinson, New York City, for defendant.

PRE-TRIAL ORDER NO. 9
NEWMAN, District Judge
In this complex antitrust action involving claims of anticompetitive practices concerning plain paper copiers, the parties have joined issue on the almost metaphysical question of whether a Xerox customer, who leases a copying machine and pays charges based upon the number of copies the machine makes, is leasing the machine or purchasing the copies. The issue arises in the context of a motion by SCM to amend its complaint in several respects, including an allegation that Xerox has engaged in price discrimination in violation of § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). Xerox opposes the motion only to the extent that Robinson-Patman violations are sought to be added. Xerox contends that its customers are not "purchasers of commodities" within the meaning of the Act.
While courts have divided over the appropriateness of considering legal sufficiency in deciding whether to permit amendment of a complaint, see cases collected at 3 Moore's Federal Practice ¶ 15.08(4) n. 14, the practice has been approved in this Circuit, Friedman v. Chesapeake and Ohio Ry. Co., 395 F.2d 663 (2d Cir. 1968), affirming 261 F. Supp. 728 (S.D.N.Y.1966), and seems especially appropriate in complex cases, see Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 309 F.Supp. 1057, 1063-64 (E.D. Pa.1969). Less clear is whether the sufficiency of SCM's Robinson-Patman allegations can be tested on the proposed pleading, or whether the sale or lease determination can be made only after trial, or perhaps on a motion for summary judgment after the factual record has been further developed. That choice requires some examination of the parties' contentions.
Xerox's argument proceeds from the undisputed premise that the Robinson-Patman Act does not apply to leases. See, e. g., Gaylord Shops, Inc. v. Pittsburgh Miracle Mile Town & Country Shopping Center, Inc., 219 F.Supp. 400, 403 (W.D. Pa.1963); Rowe, Price Discrimination Under the Robinson-Patman Act 45, 51 (1962). Xerox asserts, and SCM does not dispute, that the plain paper copier machine supplied by Xerox to its customers is not sold to them; rather the customer acquires the right to use the machine for a charge based upon the number of copies he makes. Xerox contends it is leasing the machine.
SCM contends that the price-per-copy method of charging makes the "economic reality" or "dominant nature" of the transaction a sale of copies rather than a lease of a machine. (SCM brief, p. 5).
To some extent virtually all leases paid for on the basis of usage could be considered a purchase of the benefit acquired by the user. Thus, the person who rents a car and pays by the miles driven could be said to have purchased a quantity of transportation, and the person who rents a television set and pays by the hours it is on could be said to have purchased a quantity of television viewing. SCM does not claim Robinson-Patman coverage of all such cost-per-usage leases, apparently recognizing that examples such as those given do not involve a "commodity" within the meaning of the Act, even if they could be thought to involve a purchase. See Rowe, op. cit. supra, 59-62. But SCM presses its claim here on the theory that the user of a Xerox machine purchases a copy, something sufficiently tangible to satisfy the commodity requirement. Cf. Columbia Broadcasting System, Inc. *386 v. Amana Refrigeration, Inc., 295 F.2d 375, 378 (7th Cir. 1961). What does the Xerox customer really acquire from Xerox? He does not purchase the piece of paper on which the copied images appear. This paper he acquires independently of his right to use the machine. What he obtains from Xerox is the process that transforms the plain piece of paper into one bearing images of the item to be copied. Surely that process is not a commodity within the meaning of the Act. Even if the user could be thought of as acquiring the copied images, it is exceedingly doubtful that these images, considered separately from the paper on which they appear,[1] are commodities within the meaning of the Act; moreover, however categorized, these images are surely not items that Xerox has available for sale.
Nor can a sale of a commodity be postulated from the fact that the value of the customer's copy frequently reflects to a greater extent the value of the copied images than the value of the original paper. The same could be said of the lease, on a cost-per-use basis, of any machine that makes repairs and thereby transforms possibly useless items into useful ones. The lessor of such a machine has not sold a commodity.
In some situations, determination of whether a transaction is a commodity sale within the meaning of the Act requires a full opportunity to present facts. That is often true when a construction contract must be analyzed to understand whether the sale of commodities used is "divisible" from the contract for services, General Shale Products Corp. v. Struck Construction Co., 132 F.2d 425, 528 (6th Cir. 1942), or is the "dominant" aspect of the contract, Stutsman Feed Service, Inc. v. Todd & Sargent, Inc., 336 F.Supp. 417, 419-20 (S.D.Iowa 1972). Similarly, the distinction between a sale and a consignment may require fact-finding as to the issue of whether title passed, Students Book Co. v. Washington Law Book Co., 98 U.S.App.D.C. 49, 232 F.2d 49, 51 (1955). Other transactions, however, such as a loan of money, have been held to be beyond the scope of the Act from an examination of the claim as pleaded, Bichel Optical Laboratories, Inc. v. Marquette National Bank of Minneapolis, 336 F.Supp. 1368 (D.Minn.1971).
SCM does not specify what facts would be presented to establish that the Xerox customer has purchased a commodity, other than a general reference at argument to customer attitudes. While such views may aid determination of the relevant market, they cannot supply the ingredients of "sale" or "commodity" necessary for Robinson-Patman Act coverage.[2]
Accordingly, SCM's motion to amend the complaint is denied to the extent that Robinson-Patman Act violations are alleged, and, in all other respects, is granted.
NOTES
[1] Where the customer acquires both the paper and the images upon it, as when a photographer sends his negatives to be printed, a closer question arises as to whether the customer has purchased the process of enlarging or enlarged prints that could be considered commodities.
[2] SCM also relies on characterizations of Xerox's pricing policies by Xerox officials. Thus, one major figure in Xerox's history has written, "What Haloid-Xerox would sell was copies." (Emphasis original). Dessauer, "My Years With Xerox" 125-26 (1971). Such expressions may well reflect Xerox's view that the price-per-copy method of pricing was a key ingredient of its successful marketing practices, but they cannot transform a leasing of machines into a sale of commodities within the meaning of the Act.