**MAY DEPARTMENT STORE, Plaintiff-Appellant,**

v.

**GRAPHIC PROCESS COMPANY, Defendant-Appellee,**

and

**Bel-Aire & Associates, Inc., et al., Defendants.**

No. 78–1228.

United States Court of Appeals, Ninth Circuit.

May 27, 1980.

Stephen R. Hasting, Belcher, Henzie & Biegenzahn, Los Angeles, Cal., for plaintiff-appellant.

Edward C. Broffman, Los Angeles, Cal., for defendant-appellee.

Before CHOY, HUG, and SKOPIL, Circuit Judges.

CHOY, Circuit Judge.

## INTRODUCTION

This is a commercial bribery action for treble damages under the Clayton Act as

amended by section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c).[1] The district court determined, without an opinion, that transactions between the parties were sales of services and not sales of "goods, wares, or merchandise" as required for an action under section 13(c). Summary judgment was granted to the defendant, Graphic Process Company (Graphic).

The historical facts are undisputed. We find, however, that the defendant failed to meet its burden of demonstrating that it was entitled to judgment as a matter of law. Summary judgment was therefore improper. We reverse.

For the first time on appeal Graphic challenges the subject matter jurisdiction of this court. May failed to properly plead the interstate commerce requirement of section 13(c). May now requests an opportunity to amend its complaint. We remand with instructions that the district court allow May to attempt to meet the interstate commerce requirement.

## FACTS

May Department Store (May) operates a chain of retail outlets. Graphic produces a type of printing medium, "veloxes", used by May to reproduce art work in newspaper advertisements.

From 1965 through 1973 Graphic was awarded contracts by May's agents for the production of veloxes. May alleges two of its employees breached their fiduciary duty and accepted bribes from Graphic. In exchange for the bribes the two employees awarded contracts to Graphic. The bribes were recouped by Graphic through overcharges to May.

May filed a treble damages suit for $267,-000 under 15 U.S.C. §§ 13(c) and 15. Summary judgment was awarded to Graphic. The district court found that the production of veloxes was a service performed by Graphic and was not the sale of goods. May appeals.

The parties do not disagree on the technical or physical processes of producing a velox. May creates artwork consisting of photographs and drawings. May's goal is to reproduce this artwork in newspaper ads by transforming the original image into a series of dots, a velox. May delivers the artwork to Graphic to produce the desired dot pattern. May's artwork is transformed into a dot pattern through a photographic process, and a plastic negative is created. This "half-tone" negative is produced on blank plastic stock purchased by Graphic and on equipment owned by Graphic. The negative is then overlaid on positive printing paper supplied by Graphic and processed through a contact printer. Images are produced on the printing paper through the use of light. This printing paper is run through Graphic's developing machine to produce a positive image, a velox. The velox and the original artwork are returned to May. May adds necessary type and paste-up and sends a "camera-ready copy" to a newspaper printer. The printer creates the actual printing plate and produces the final product, newspaper advertisements.

## ISSUES

1.  Did the district court err in granting the defendant's motion for summary judgment by determining that the underlying transactions were for sale of services and not sale of goods?

2.  Is May entitled to amend its complaint to sufficiently plead the interstate commerce requirement of 15 U.S.C. § 13(c)?

---

1.  15 U.S.C. § 13(c): "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein  .  .  ."

## STANDARD OF REVIEW OF SUMMARY JUDGMENT

Our examination is limited to determining the appropriateness of summary judgment in this case. *California Pacific Bank v. Small Business Administration,* 557 F.2d 218 (9th Cir. 1977). In determining whether summary judgment was proper, we are not bound by the usual rule requiring us to accept findings of the trial court unless they are clearly erroneous. *Pepper & Tanner, Inc. v. Shamrock Broadcasting, Inc.,* 563 F.2d 391 (9th Cir. 1977). Our standard of review is identical to that of the trial court. *Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757 (9th Cir. 1980). Summary judgment may properly be granted only when no genuine issue of material fact exists and the moving party is clearly entitled to prevail as a matter of law. *Real v. Driscoll Strawberry Associates,* 603 F.2d 748, 753 (9th Cir. 1979).

This court recently affirmed its belief that summary judgment is not favored in antitrust litigation. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 668 (9th Cir. 1980). We recognize, however, that summary judgment is not to be read out of antitrust cases. When facts are undisputed and all reasonable inferences drawn in favor of the nonmoving party defeat any possible legal theory, summary judgment is proper and should be granted. *Mutual Fund Investors, Inc. v. Putnam Management Co.,* 553 F.2d 620 (9th Cir. 1977). Nevertheless, we are reminded of this court's recent admonition that summary judgment is an extreme remedy. It should not be granted unless the movant has established its right to judgment with such clarity as to leave no room for controversy. It must be found that the other party is not entitled to recover under any discernable circumstances. *Real v. Driscoll Strawberry Associates,* 603 F.2d 748 (9th Cir. 1979).

**2.** 15 U.S.C. § 13(a): "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and qualify, . . . ."

**3.** Our research uncovered tens of cases interpreting the terms of sections 13(a) and 13(c).

## GOODS OR SERVICES

It is necessary for an action under section 2(c) of the Robinson-Patman Act that the transactions between the parties constitute a sale of "goods, wares, or merchandise" and not merely a contract for services. *Rangen, Inc. v. Sterling Nelson & Sons, Inc.,* 351 F.2d 851 (9th Cir. 1965), *cert. denied,* 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853 (1966). The phrase "goods, wares, or merchandise" is not defined by the Act. Similarly, the term "commodity" found in 15 U.S.C. § 13(a)[2] is not defined. Legislative history reveals only that Congress intended the Act to apply to tangible goods and not services. 79 Cong. Rec. 9079, June 11, 1935. *See Baum v. Investors Diversified Services,* 409 F.2d 872 (7th Cir. 1969); *Kennedy Theater Ticket Service v. Ticketron, Inc.,* 342 F.Supp. 922 (E.D.Pa.1972). Our legislative search discloses no congressional discussions on the distinction between goods and services for purposes of the Act. Courts have understandably struggled to articulate a test to define limitations on the Act's application.[3]

The Seventh Circuit found that Congress intended commodities to be limited to tangible products of trade. *Baum v. Investors Diversified Services, supra.* Evidence of a tangible product is needed to meet the requirements of either section 13(a) or 13(c). *See, e. g., La Salle Street Press, Inc. v. McCormick and Henderson, Inc.,* 293 F.Supp. 1004 (N.D.Ill.1968); *Kennedy Theatre Ticket Service v. Ticketron, supra.* The Fifth Circuit, however, noted that virtually no service can be performed without the incidental involvement or transfer of a tangible item. *Tri-State Broadcasting Co. v. UPI,* 369 F.2d 268 (5th Cir. 1966). In *Tri-State* the Fifth Circuit held that the "domi-

An impressive list of citations can be garnered from *Advanced Office Systems v. Accounting Systems,* 442 F.Supp. 418, 421-422, (D.S.C. 1977); *Kennedy Theater Ticket Service v. Ticketron, Inc.,* 342 F.Supp. 922 (E.D.Pa.1972); and *Anderson, Toulmins Antitrust Laws of the United States* (1978), v. 7, pp. 7-9 of supplement.

nant nature"[4] of a transaction must control in establishing whether it falls within the provisions of the Robinson-Patman Act. In a later case the Fifth Circuit expanded on the dominant nature standard by rejecting a strict comparison of the cost of labor and parts in a repair contract. *Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186 (5th Cir. 1978). That court found that repair work on aircraft engines was a service even though the cost of parts exceeded the cost of labor.

This court once examined the distinction between goods and services for purposes of section 13(c). *Rangen v. Sterling Nelson & Sons, Inc., supra.* In that case a manufacturer of fish food alleged that a competitor bribed Idaho officials to gain business. In determining whether the supplying of fish food was a sale of goods or a service, this court noted that Idaho supplied some ingredients to Rangen. Rangen, however, supplied over fifty percent of the ingredients and did not bill separately for compounding, processing, and mixing services. On these facts this court concluded the transaction was a sale of goods. *Rangen, supra* at 861.

Both parties rely on *SCM Corp. v. Xerox Corp.*, 394 F.Supp. 384 (D.Conn.1975). We find the case helpful but not dispositive of the issue here. In that case the lease of a photocopy machine with payments based on the number of copies produced was held not to be a commodity for purposes of section 13(a). The trial court found that the process of transforming a plain piece of paper into one bearing an image was not a commodity. It noted, however, that the paper was not supplied by Xerox. Where a customer acquires both the paper and the image from the supplier, a closer question is created. *SCM, supra* at 386, n. 1. The analogy of a photographer sending in nega-

tives for processing was considered. Has such a photographer purchased the process of enlarging the negatives (a service) or enlarged prints (goods)? The trial court left the question unanswered. *Id.* The issue before us is similar to the trial court's analogy and must now be addressed.

We join other circuits[5] in adopting a "dominant nature" standard to determine if transactions are for sale of services or goods. We accept the Fifth Circuit's reasoning that the dominant nature of a transaction cannot be measured by merely breaking down the costs between intangible service and tangible goods provided. *Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186 (5th Cir. 1978). We do believe, however, that such a comparison might be useful as one of many factors to consider. The supplying of ingredients and the breakdown of costs on billing invoices might be other factors for consideration. *Rangen v. Sterling Nelson & Sons, Inc., supra.*

We realize the difficulty in applying an abstract standard. In some instances, of course, the "dominant nature" of a transaction will be clearly a service or goods. *E. g. Freeman v. Chicago Title & Trust Co.*, 505 F.2d 527 (7th Cir. 1974) (title insurance and title searches are services); *Tri-State Broadcasting Co. v. UPI*, 369 F.2d 268 (5th Cir. 1966) (news wire services are not goods); *Bichel Optical Lab., Inc. v. Marquette National Bank of Mpls.*, 336 F.Supp. 1368 (D.Minn.1971), *affirmed* 487 F.2d 906 (8th Cir. 1973) (lending money is a service). Some factual circumstances, however, present a much closer question. *E. g. Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 493 F.2d 383 (8th Cir.), *cert. denied* 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974) (in dictum, newspaper is a commodity);

---

**4.** The Sixth Circuit is generally credited with developing the dominant nature test. *General Shale Products Corp. v. Struck Construction Co.*, 132 F.2d 425 (6th Cir. 1942), *cert. denied*, 318 U.S. 780, 63 S.Ct. 857, 87 L.Ed. 1148 (1943). That court found no sale of a commodity in a construction contract even though the contract listed separately the cost of tangible items to be supplied. *See Aviation Specialties, Inc. v.*

*United Technologies Corp.* 568 F.2d 1186, 1191 (5th Cir. 1978).

**5.** *E. g. Tri-State Broadcasting Co. v. UPI*, 369 F.2d 268 (5th Cir. 1966); *Freeman v. Chicago Title & Trust Co.*, 505 F.2d 527 (7th Cir. 1974); *Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 493 F.2d 383 (8th Cir.), *cert. denied* 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974).

*SCM Corp. v. Xerox Corp., supra* (leasing of photocopy machine is a service); *Stutzman Feed Service, Inc. v. Todd & Sargent, Inc.,* 336 F.Supp. 417 (S.D.Iowa 1972) (construction contract might be either goods or a service). In the latter classification we note that often the application of the dominant nature test is less than scientific.

■ The district court judge in this case determined that the underlying transactions between May and Graphic were for sale of services and not goods. We hold, however, that Graphic has failed in its burden of demonstrating that it is entitled to judgment as a matter of law. Viewing the evidence and inferences that may be drawn from the facts in a light most favorable to May, we find that Graphic has not demonstrated that it provided a service and not goods. *Real v. Driscoll Strawberry Associates,* 603 F.2d 748 (9th Cir. 1979). Our application of the dominant nature standard to the facts provided by Graphic supports our conclusion. May does not supply Graphic with any tangible ingredients. The intangible ingredient, artwork, is returned to May with a tangible product, a velox. Graphic has not produced any comparison between the cost of the physical components of a velox and the price charged May. There is no evidence in the record that Graphic billed May separately for its labor. We find, therefore, that summary judgment was improperly granted. We do not hold, however, that the transactions involved in this dispute were sales of goods. The plaintiff has the burden of proving this element at trial.

## INTERSTATE COMMERCE

■ Graphic raises for the first time on appeal a challenge to our subject matter jurisdiction. Graphic argues that May failed to allege that the transactions were in interstate commerce as required by 15 U.S.C. § 13(c). This interstate commerce requirement has been treated as a threshold jurisdictional question. *Gulf Oil Corp. v.*

*Copp Paving Co.,* 419 U.S. 186, 202, n. 19, 95 S.Ct. 392, 402, n. 19, 42 L.Ed.2d 378 (1974). Failure to plead and prove the involvement of interstate commerce results in dismissal for lack of subject matter jurisdiction. *E. g. Red Apple Supermarkets, Inc. v. Deltown Foods, Inc.,* 419 F.Supp. 1256 (S.D.N.Y. 1976).

■ A party may raise jurisdictional challenges any time during the proceedings. *Kipperman v. Academy Life Insurance Co.,* 554 F.2d 377 (9th Cir. 1977). We will dismiss an action on appeal if jurisdiction is lacking. *Harmon v. Superior Court of California,* 307 F.2d 796 (9th Cir. 1962).

■ The allegation in May's complaint that jurisdiction is invoked by 15 U.S.C. § 13(c) is conclusionary and insufficient to invoke federal jurisdiction. *Mantin v. Broadcast Music, Inc.,* 244 F.2d 204 (9th Cir. 1957). May admits its pleadings were insufficient and did not properly allege interstate commerce. May, however, asserts a right under 28 U.S.C. § 1653 [6] to amend its complaint.

■ This court has determined that an action should not be dismissed for lack of jurisdiction without giving the plaintiff an opportunity to be heard unless it is clear the deficiency cannot be overcome by amendment. *Harmon v. Superior Court of California, supra.* The interstate character of the companies involved may provide a sufficient commerce nexus to meet the jurisdictional requirement. *Rangen v. Sterling Nelson & Sons, Inc.,* 351 F.2d 851, 861 (9th Cir. 1965), *cert. denied* 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853 (1966). Since it is not clear that the deficiency cannot be overcome by amendment, we remand with instructions that May be allowed to amend its complaint to attempt to properly allege the interstate commerce requirement of 15 U.S.C. § 13(c).

**6.** 28 U.S.C. § 1653: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

## SUFFICIENCY OF AFFIDAVITS

Graphic alleges that May's affidavit fails to meet the requirements of Fed.R.Civ.P. 56(e). We find no merit to Graphic's attack on the sufficiency of May's affidavit. Since we reverse the summary judgment order, it is unnecessary to discuss May's attack on Graphic's affidavit.

## WE REVERSE AND REMAND.

SKOPIL, Circuit Judge (dissenting):

I dissent from that portion of the majority's opinion reversing the summary judgment order.

I agree with the majority opinion's description of the relevant transactions between the parties. I also agree that resolution of this controversy requires us to adopt the "dominant nature" standard. I disagree, however, that application of the dominant nature standard supports a finding that summary judgment was improperly granted. I therefore dissent.

I find that Graphic adequately demonstrated that the dominant nature of the parties' transactions was the sale of services and not the sale of goods. Graphic does nothing more than transform May's artwork into an almost identical image. The production of a tangible item is only incidental to the service provided by Graphic.

I believe that the legislative history of the Act supports my conclusion. Although the history makes no definitive distinction between goods and services, it is clear that Congress intended to limit the Act to tangible items of trade. Representative Patman explained the Act in these terms, which emphasized its application to tangible products:

> " . . . this bill insures to the independent dealer who buys one carload, whether of groceries, dry goods, hardware or any other commodity, the same price that is given to the chain buying 10 carloads of the same good, . . . " 79 Cong.Rec. 9079, June 11, 1935.

Although Representative Patman was describing "commodities" in reference to 15 U.S.C. § 13(a), I believe that the statement is equally applicable to defining "goods" for purposes of 15 U.S.C. § 13(c). In the absence of congressional action to expand the scope of the Act's application,[1] I would decline to apply it to transactions which are borderline between goods and services. I would therefore affirm the district court, holding that Graphic was entitled to judgment as a matter of law.

---

1. A proposal to amend 15 U.S.C. § 13(a) to expand the term "commodities" to include specific services was introduced in Congress in 1957. Congress rejected the proposal and affirmed its intent that the provision cover "only tangible commodities and not services". *See* H.R. 8277, 85th Cong. 1st Sess., 103 Cong.Rec. 9898 (1957); H.R. 607, 85th Cong. 1st Sess. 66–67 (1957).