RED APPLE SUPERMARKETS,
INC., Plaintiff,

v.

DELTOWN FOODS, INC. and Kraftco
Corp., Defendants.

No. 75 Civ. 5187 (WCC).

United States District Court,
S. D. New York.

Sept. 27, 1976.

Weiss Rosenthal Heller & Schwartzman, New York City, for plaintiff; Richard F. Horowitz, Eli Feit, New York City, of counsel.

Botein, Hays, Sklar & Herzberg, New York City, for defendant Deltown Foods, Inc.; Sidney C. Winton, Stanley M. Kolber, Francis J. Marino, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Kraftco Corp.; Francis Carling, David B. Tulchin, New York City, of counsel.

## MEMORANDUM AND ORDER

CONNER, District Judge:

Plaintiff, Red Apple Supermarkets, Inc., is a retail supermarket chain with stores in Queens and New York Counties in the State of New York. It has brought this action against defendants Kraftco Corporation and Deltown Foods, Inc., a licensee of Kraftco authorized to manufacture and distribute Light n' Lively low-fat milk in the New York City area, and has made a motion for class certification. Defendants have made motions to dismiss both counts of the Complaint. Because it is more readily disposable, we turn first to Count II.

## I.

Count II of the Complaint charges defendants with tying arrangements in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14. Defendant Deltown Foods, Inc., has moved, pursuant to Rule 12(b)(6) F.R.Civ.P., to dismiss this count for failure to state a claim upon which relief can be granted. Deltown asserts, and plaintiff does not deny, that an officer of plaintiff has expressed, in a deposition, plaintiff's intention to drop Count II. In any event, plaintiff has not opposed the motion as to that count. The motion to dismiss Count II is therefore granted.

## II.

In Count I, defendants are charged with price discrimination in violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Anti-Discrimination Act, 15 U.S.C. § 13(a). This is a claim of price discrimination in "secondary-line competition," *i.e.*, an interference with competition between customers of defendant sellers. Both defendants have moved, pursuant to Rule 12(b)(1) F.R.Civ.P., to dismiss this count for lack of subject matter jurisdiction, on the ground that the challenged sales were not made "in" interstate commerce within the meaning of the Robinson-Patman Anti-Discrimination Act ("the Act").

On a motion to dismiss, the factual allegations of the Complaint must be accepted as true, *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), and they "should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Thus, dismissal of this claim would be unwarranted if any reasonable interpretation of the facts alleged would support plaintiff's claim for relief. *Kurzweg v. Hotel St. Regis Corp.,* 309 F.2d 746 (2d Cir. 1962). Examination of the instant claim reveals that it does not pass muster under even this very liberal test.

Section 2(a) of the Act provides, in pertinent part:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States * * * and where the effect of such discrimination may be substantially to lessen competition * * * or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *."

Thus, to maintain an action for price discrimination in secondary line competition under the Act, and thereby invoke this Court's federal question and anti-trust jurisdiction under 28 U.S.C. §§ 1331, 1337, a plaintiff must allege that

1. defendants are engaged in "interstate commerce";

2. defendants have "discriminate[d] in price" in a manner proscribed by the Act; and

3. one or more of the "purchases involved in such discrimination are in [interstate] commerce" within the meaning of the Act.

Plaintiff here has clearly made the first two of these allegations. Both defendants have admitted allegation (1) in their answers, and allegation (2) must be accepted as true for purposes of this motion. As for requirement (3), the Complaint simply alleges, in general and conclusory fashion, that "price discriminatory sales made by Deltown to members of the class were made in interstate commerce and within this District." (Compl. ¶ 11). Plaintiff's memorandum in opposition to the present motion states, "for purposes of this motion, we assume that the Light n' Lively milk purchased by plaintiff and its competitors is distributed within the State of New York." Since plaintiff is unable to demonstrate, or even assert, the existence of an *actual* purchase that crosses state lines, it attempts to satisfy require-

ment (3) by employing a "stream of commerce" theory.[1] It bases this theory upon facts that are not alleged in the Complaint, namely, that some of the raw, whole milk used in Light n' Lively moved in a "continuous stream" from cows on Pennsylvania farms through defendants' New York processing plants, to plaintiff's retail stores in New York. Plaintiff argues that early cases such as *Olympia Food Market, Inc. v. Sheffield Farms Co., Inc.,* 1955 Trade Cas. ¶ 68,064 (S.D.N.Y.1955); *Foremost Dairies, Inc. v. Federal Trade Commission,* 348 F.2d 674 (5th Cir.), *cert. denied,* 382 U.S. 959, 86 S.Ct. 435, 15 L.Ed.2d 362 (1965), and *Dean Milk Co. v. Federal Trade Commission,* 395 F.2d 696 (7th Cir. 1968), require a broad reading of the term "purchases * * * in commerce" to include the entire stream of commerce through which the subject of the purchase passes before its final intrastate sale.

More recent cases suggest an interpretation of "purchases" that is much closer to the literal meaning of the term. The Supreme Court has summarized and approved these "narrow" interpretations:

"With almost perfect consistency, the courts of appeals have read the language requiring that 'either or any of the purchases involved in such discrimination [be] in commerce' to mean that § 2(a) applies only where ' "at least one of the two transactions which, when compared, generate a discrimination * * * cross[es] a state line".' [Rowe, Price Discrimination Under the Robinson-Patman

Act 79 (1962)]. In the face of this long-standing interpretation and the continued congressional silence, the legislative history does not warrant our extending § 2(a) beyond its clear language to reach a multitude of local activities that hitherto have been left to state and local regulation." *Gulf Oil v. Copp Paving Co.,* 419 U.S. 186, 200, 95 S.Ct. 392, 401, 42 L.Ed.2d 378 (1974).

See also *Hiram Walker, Inc. v. A & S Tropical, Inc.,* 407 F.2d 4 (5th Cir.), *cert. denied,* 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969); *Bowen v. New York News, Inc.,* 522 F.2d 1242, 1246 n.2 (2d Cir. 1975); *Borden Co. v. Federal Trade Commission,* 339 F.2d 953 (7th Cir. 1964); *Miles v. Coca-Cola Bottling Co.,* 360 F.Supp. 869 (E.D.Wisc.1973).[2]

Even if the stream of commerce analysis can be said to have continuing validity after the narrow construction given the Act in the *Copp Paving* line of cases,[3] it applies only to situations where a finished product is shipped into one state and is there resold in a substantially unchanged condition. In the instant case, however, the stream of commerce was staunched by the complex processing of the raw material within the State of New York. Light n' Lively is both legally and chemically distinct from the out-of-state, raw milk that, after processing, forms only one of its ingredients.

In reaching that conclusion, this Court is influenced, but not controlled, by the state

---

1. The seminal stream of commerce case is *Standard Oil v. Federal Trade Commission,* 340 U.S. 231, 236–38, 71 S.Ct. 240, 95 L.Ed. 239 (1951), which ruled that the defendant's shipment of a finished product (refined gasoline) into Detroit and temporary storage there before sale in Michigan (in an allegedly discriminatory manner) was within the "in" interstate commerce requirement of the Act.

2. This interpretation, of course, gives the Robinson-Patman Anti-Discrimination Act a much narrower scope than the Sherman Act, which also covers activities that have "effects on commerce." The difference between the two as reflected in their legislative histories, is fully discussed in *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 195, 199–201, 95 S.Ct. 392 (1974). See

also *Foremost Dairies v. Federal Trade Commission,* 348 F.2d 674, 676 (5th Cir.), *cert. denied,* 382 U.S. 959, 86 S.Ct. 435, 15 L.Ed.2d 362 (1965). Hence, plaintiff's citation of *Cook v. Ralston Purina Co.,* 366 F.Supp. 999 (M.D.Ga. 1973), and other Sherman Act cases is of no avail.

3. Plaintiff has failed to cite a single opinion by the Second Circuit that approves the stream of commerce analysis in Robinson-Patman Act cases. Furthermore, *Hampton v. Graff Vending Co.,* 516 F.2d 100 (5th Cir. 1975), shows that even the Fifth Circuit has restricted the broad sweep of its earlier *Foremost Dairies* decision.

and federal regulations that set content specifications and require separate identification and labelling for "milk," 21 C.F.R. § 18.2, for "skim milk," 21 C.F.R. § 18.20, and for "lowfat milk," 21 C.F.R. § 18.10 (e.g., Light n' Lively). Also, defendants' undisputed affidavits[4] demonstrate that a significant physical change has been made within the New York processing plants. The parties have stipulated, and this Court has ordered, that details of the manufacture of Light n' Lively will not be divulged, to preserve trade secrets. It will suffice to draw a general outline of operations in Deltown's Fraser, Yonkers, and Copiague plants—all in the State of New York.[5] The first operation at the Fraser plant is the separation of raw, whole milk into cream (used for other dairy products, such as butter and ice cream) and skim milk. Next, some of the skim milk is transformed into spray dry, non-fat skim milk powder. These dried, non-fat milk solids are, in turn, blended with raw, whole milk and liquid skim milk. This blend is then shipped in tank trucks to the Yonkers and Copiague plants where Vitamins A and D are added and the mixture is homogenized, pasteurized, and finally packaged for distribution within New York.

Thus, during the period in which some raw, whole milk came from farms outside New York State, that milk contributed only one of the ingredients in the final product sold in New York to plaintiff. Even the Fifth Circuit, after writing Foremost Dairies, supra, acknowledged that the "interstate movement of mere ingredients" is insufficient to meet the requirements of the Act where they are "mixed together within" the state of sale. Scranton Const. Co., Inc. v. Litton Industries Leasing Corp., 494 F.2d 778, 781 (5th Cir. 1974). See also United States v. M.P.M., Inc., 397 F.Supp. 78, 85 (D.Colo.1975).

For the above reasons, Foremost Dairies and Dean Milk are inapposite. While these cases applied a stream of commerce analysis to the importation, treatment, and sale of fluid whole milk, Foremost Dairies characterized the in-state processing of out-of-state milk as "rather negligible," 348 F.2d at 677. Similarly, the Dean Milk court said that the raw milk in its case "underwent minimal changes and retained its essential identity throughout certain processing operations," 395 F.2d at 715 n.37. The case at bar, on the other hand, involves considerably more processing. It leans toward, but does not reach, the other line of cases, which involve products clearly outside the stream of commerce, such as Central Ice Cream Co. v. Golden Rod Ice Cream Co., 287 F.2d 265 (7th Cir.), cert. denied, 368 U.S. 829, 82 S.Ct. 50, 7 L.Ed.2d 32 (1961). There, the defendant purchased "all butterfat it used in the manufacture of ice cream from brokers located in Chicago and a substantial part came from milk originating in Wisconsin and Illinois." Id. at 266. Despite the fact that interstate milk supplied the principal ingredient for the ice cream, the Seventh Circuit affirmed the denial of a claim under the Act since the ice cream was both manufactured and sold "solely within the State of Illinois." Id. In Central Ice Cream, the finished product had significantly more butterfat than the milk which had previously moved in interstate commerce, while in the present case the final product differs from milk by having significantly less butterfat. In both situations, the milk was purchased across state lines, but the final, and unique, product was sold intrastate.

Another analogous case is Belliston v. Texaco, Inc., 455 F.2d 175 (10th Cir.), cert. denied, 408 U.S. 928, 92 S.Ct. 2494, 33 L.Ed.2d 341 (1972), which was cited with approval by the Supreme Court in Copp

4. There is no disagreement as to how the processing is done; plaintiff disputes only the characterization of this processing as "complex."

5. Between October 20, 1971 (the date of the first allegedly discriminatory activities) and November 1973, the processing was done by Kraftco at its Richmond Hill, New York plant. Between November 1973 and November 1974, all of the processing (except the production of spray dry skim milk) was done at the same Queens, New York plant by Deltown.

*Paving.* In *Belliston,* the plaintiffs attempted to establish a Robinson-Patman claim by a stream of commerce theory, because crude oil had been imported from Colorado to Utah, refined into gasoline in Utah and then sold (in an allegedly discriminatory manner) in Utah. The Tenth Circuit, relying upon *Central Ice Cream, supra,* held that the flow of commerce had been staunched by the Utah oil refining, which resulted in a change of character in the product, and it distinguished the minimal processing of *Dean Milk* and *Foremost Dairies.* As with the production of ice cream in *Central Ice Cream* and the refinement of oil in *Belliston,* the New York production of Light n' Lively involves the separation of a raw product into its components, complex processing, and the manufacture of a new, ultimate product substantially different from its raw ingredients.

Moreover, the stream of commerce in the instant case was further interrupted—at least with respect to defendant Deltown—by Eastern Milk Producers, an independent corporation that collected the raw milk from Pennsylvania farms and shipped it to Deltown, F.O.B., New York. The fact that the defendant had not itself brought the raw product across state lines served as an alternative ground for denying the Robinson-Patman claim in *Belliston.* The *Belliston* court observed:

> "The lower court's determination that the gasoline was the same 'stuff'—i. e., a petroleum product—that Texaco produced in Colorado, thereby creating an interstate connection, is not valid. Even if this distinction were valid the petroleum products 'changed hands'. Texaco did

not import the crude oil into Utah." 455 F.2d at 178–79.

See also *Hiram Walker, Inc. v. A & S Tropical, Inc., supra,* at 9.

Finally, Deltown used raw milk originating outside of New York State only from November 1973 to November 1974, when such use was terminated.[6]

■ For the reasons stated, this Court concludes that the "purchases in * * * commerce" requirement of the Robinson-Patman Anti-Discrimination Act is not met, and the Court has no subject matter jurisdiction over the claim.[7]

### III.

Since there is no further basis for invoking jurisdiction under 28 U.S.C. § 1331 or 28 U.S.C. § 1337, and plaintiff has alleged neither a state claim that could be entertained under this Court's diversity jurisdiction, 28 U.S.C. § 1332, nor any other statutory basis for federal jurisdiction, the Complaint is dismissed.

SO ORDERED.

---

6. Hence, even if this Court could be convinced that a stream of commerce theory should be applied to this case, plaintiff's claim against Deltown would be restricted to that one-year period.

Kraftco ceased producing and selling Light n' Lively in 1973, when it licensed Deltown to do so. Kraftco had apparently obtained some of its raw, whole milk from New Jersey and Pennsylvania. Even if plaintiff should prevail, its claim against Kraftco would be restricted to the portion of the 1971 to 1973 period during

which Kraftco both imported milk from outside New York and sold Light n' Lively directly to plaintiff and its competitors.

7. Plaintiff's class action allegations do not cure this jurisdictional deficiency. The named plaintiff in a class action must itself have a claim over which the court has jurisdiction. See *Miles v. Coca-Cola Bottling Co.,* 360 F.Supp. 869, 871 (E.D.Wisc.1973); *Greenstein v. Paul,* 275 F.Supp. 604 (S.D.N.Y.1967), aff'd, 400 F.2d 580 (2d Cir. 1968).