# Scope of Procurement Priority Accorded to the Federal Prison Industries under 18 U.S.C. § 4124

The procurement priority accorded to "products" of the Federal Prison Industries under 18 U.S.C § 4124 does not include services.

November 8, 1989

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
GENERAL SERVICES ADMINISTRATION

This memorandum responds to your request for our opinion whether the procurement priority accorded to "products" of the Federal Prison Industries ("FPI") under 18 U.S.C. § 4124 for sale to federal agencies includes services as well as commodities.[1] The General Services Administration ("GSA") maintains that "products" under section 4124 refers solely to commodities and not to services.[2] FPI contends that "products" includes services.[3] For the reasons set forth below, we conclude that "products" does not include services under the statute.

This dispute over the meaning of section 4124 began in 1986, when the GSA proposed to amend the Federal Acquisition Regulations ("FAR") to deny FPI priority consideration over commercial suppliers in the acquisition of services by federal agencies. 51 Fed. Reg. 21,496 (to be codified at 48 C.F.R. pt. 8) (proposed June 12, 1986). Currently, the FAR provide that FPI has a priority over commercial sources with respect to services as well as commodities. 48 C.F.R. § 8.603(a)(2). GSA proposed the change to make the regulations consistent with section 4124, on which the regulations are based. FPI challenged this proposal, arguing that the word "products" in section 4124 must be understood to

---

[1] Letter for Douglas W Kmiec, Assistant Attorney General, Office of Legal Counsel, from Robert C. MacKichan, Jr., General Counsel, General Services Administration (Jan 4, 1989) ("GSA Letter"), attaching *GSA Position on Procurement of Services From Federal Prison Industries* ("GSA Memorandum").

[2] GSA Letter at 1-2; GSA Memorandum at 1-5

[3] Letter for William P. Barr, Assistant Attorney General, Office of Legal Counsel, from J Michael Quinlan, Director, Federal Bureau of Prisons (June 19, 1989) ("FPI Letter"), enclosing Letter for GSA/FAR Secretariat, from Harry H. Flickinger, Acting Assistant Attorney General for Administration, Department of Justice (Oct. 16, 1986) ("JMD Letter"), Letter for General Counsel, GSA, from Eugene N Barkin, General Counsel, Bureau of Prisons (July 31, 1973)

include services and that priority over commercial sources is therefore mandated.[4]

Section 4124 requires federal agencies and institutions to purchase "such products of the industries authorized by this chapter as meet their requirements and may be available."[5] Neither section 4124 nor related sections contains a definition of "products." *See* 18 U.S.C. §§ 4121-4128. The natural meaning of the word suggests, however, that it means a commodity,[6] rather than the provision of labor that constitutes the usual meaning of the word "service."[7] This interpretation of "products" in section 4124 is confirmed by section 4122(a), which provides that FPI was created to determine what operations shall be conducted in federal penal institutions "for the production of commodities."[8] 18 U.S.C. § 4122(a); *accord id.* § 4122(b)(1) (FPI to operate prison workshops so no one private industry bears an undue burden of competition from the workshops' "products"); *id.* § 4122(b)(2) (FPI to concentrate on providing to federal agencies "only those products" that maximize inmate employment); *id.* § 4122(b)(3) (FPI to diversify its products); *id.* § 4122(b)(4) (FPI decision to introduce a new product or expand production of a product to be made by board of directors).

FPI argues that it is dangerous to impose today's "plain meaning" on the words of a statute written half a century ago.[9] Both the statute and the

---

[4] FPI does not challenge the priority the FAR currently give to services provided by the blind or other severely handicapped under 41 U.S.C. § 48. *See* FPI Letter at 2 ("[W]e strongly urge that the proposed amendment to the FAR not be adopted and that the current version, establishing a priority for FPI for services *between the blind and commercial sources*, be continued.") (emphasis added); JMD Letter at 6 n.7 ("Continued priority for FPI in the provision of services would not effect [sic] the priority, over FPI, in the provision of services that exists for the Workshop for the Blind and Other Severely Handicapped (BOSH) " The GSA is thus off point with its warning that "[a] determination by the Office of Legal Counsel that 18 U.S.C. § 4124 does afford FPI priority status in Government contracting in the service area could have a severe impact on the mandatory source program for workshops for the blind and handicapped administered by the Committee for Purchase from the Blind and Other Severely Handicapped." GSA Letter at 2.

[5] Section 4124 provides in relevant part as follows
   The several Federal departments and agencies and all other Government institutions of the
   United States shall purchase at not to exceed current market prices, such products of the
   industries authorized by this chapter as meet their requirements and may be available

[6] Webster's Third New International Dictionary 1810 (1986) ("Webster's") defines "product" as "the *result* of work or thought" (emphasis added). It defines "commodity" as "an economic *good* . . a product of agriculture, mining, or sometimes manufacture *as distinguished from services.*" *Id.* at 458 (emphasis added)
   We are not persuaded by FPI's argument that the word "product" necessarily includes services simply because the term "Gross National Product" has been defined to include both goods and services. That phrase is a term of art imported from a different context and, thus, cannot be dispositive of the issue

[7] Webster's defines "service" as "useful labor that *does not produce a tangible commodity* " *Id.* at 2075 (emphasis added)

[8] As originally enacted, this section referred to "articles and commodities " Act of May 27, 1930, ch. 340, § 3, 46 Stat. 391 (1930). The words "articles and" were deleted in 1948 during a recodification that was not intended to have any substantive effect. Legislative History of Title 18, United States Code at 2649 (1948).

[9] "One simply cannot apply today's precise definitions of terms, such as services, to the same words used fifty years earlier in a far looser context." JMD Letter at 4.

legislative history, however, lead us to conclude that the Congress that initially passed this statute in the 1930's understood the distinction between "products" and "commodities," on the one hand, and "services" on the other. The very chapter under consideration permits the Attorney General to make "the *services* of United States prisoners" available to federal agencies for use on public works projects, 18 U.S.C. § 4125(a), yet "services" is not mentioned in section 4124. Clearly, the Congress of that period was familiar with the word "services" and understood it to have a meaning distinct from "products."[10]

FPI argues that since federal prisoners had in fact performed services since at least the early years of this century, "products" as used in the statute should be understood to include services. FPI points out that, at various times, federal prisoners have been engaged in laundry services, tire recapping, furniture refinishing, and typewriter repair.[11] FPI argues that such services "must be presumed to have been sanctioned by that legislation" — and therefore that "products" must include "services" — "in the absence of a clear legislative mandate to the contrary."[12] We disagree. The issue before us is not whether federal prisoners may perform services; it is whether 18 U.S.C. § 4124 grants the FPI a procurement priority for such services. We think the plain meaning of that statute shows that services are not covered.

The legislative history of section 4124 confirms our conclusion. With one exception, the examples of prisoner activities discussed at the time of the statute's enactment all involved the manufacture of commodities, and that example was omitted from the version finally enacted.[13] Subsequent amend-

---

[10] Our conclusion is reinforced by the language of the Robinson-Patman Price Discrimination Act passed in 1936. 15 U S.C § 13. This Act makes it unlawful for persons engaged in commerce "to discriminate in price between different purchasers of *commodities* of like grade and quality." *Id* (emphasis added) Over the past half-century, courts have firmly established that the word "commodity" in this context refers to "a *product* as distinguished from a service " *Baum v. Investors Diversified Servs , Inc.*, 409 F.2d 872, 874 (7th Cir. 1969) (emphasis added), *see also May Dep't Store v. Graphic Process Co* , 637 F.2d 1211, 1214-16 (9th Cir 1980). We hesitate, therefore, to declare that Congress in the 1930's failed to grasp the distinction between commodities and services.

[11] JMD Letter at 1

[12] *Id* at 2

[13] During the floor debate, reference was made to a job that would qualify as a service 72 Cong. Rec. 2146 (1930). Fearing that the new and expanding prison industries would displace federal civilian workers, especially hundreds of employees who repaired mail bags, Representative LaGuardia offered the following amendment

*Provided further*, That no class of articles or commodities shall be produced for sale to or use of departments of independent establishments of the Federal Government in United States penal or correctional institutions which at present are being produced by civilian employees at the navy yards, arsenals, *mail bag repair shop*, or other Government owned and operated industrial establishments, or such articles as these Government owned and operated establishments are equipped to produce

72 Cong. Rec. at 2147 (emphasis added). He viewed this amendment as necessary because "[i]t [was] contemplated in the course of this prison reform to have the mail bag repair work conducted in jails." *Id* (statement of Rep LaGuardia). The final version of the statute, however, dropped the reference to mail

Continued)

ments to the statute also fail to indicate any intent to include services among priority items. In fact, subsequent congressional action in the procurement preference area indicates that Congress understood FPI's priority to apply only to goods and not services. In 1971, Congress amended the Javits-Wagner-O'Day Act of 1938, which created a procurement preference for commodities made by the blind that was subordinate to the existing priority for FPI products. 41 U.S.C. §§ 46-48c. One of the principal objectives of the 1971 amendment was to grant to the Committee on Purchase from the Blind and Other Severely Handicapped ("CPBOSH") a preference for services in *addition* to its existing preference for commodities. *See* H.R. Rep. No. 228, 92d Cong., 1st Sess. 2 (1971), *reprinted in* 1971 U.S.C.C.A.N. 1079. The fact that Congress believed this amendment necessary only underscores the distinction between "commodities" and "services."

Furthermore, the 1971 Act expressly considered the relationship between the preference accorded to CPBOSH and the existing preference for FPI products. It provides a preference to "any commodity *or service*" on a list prepared by CPBOSH, subject to the availability of such "commodity *or service.*" 41 U.S.C. § 48 (emphasis added). The section goes on, however, to note that it does not apply "to the procurement of *any commodity* which is available for procurement from [FPI], and which, under *section 4124 ... is required to be procured* from such industry." *Id.* (emphasis added). The omission of any reference to services in this exception indicates that Congress did not believe that FPI was entitled under section 4124 to any preference for services.

We are not persuaded by FPI's argument that the legislative history of a 1988 amendment to the FPI statute "shows congressional awareness and approval of FPI providing services." *See* FPI Letter at 1. This history asserts that "[i]n addition to establishing UNICOR [another name for FPI] as a wholly owned Government corporation, the enabling legislation also provides that other Federal Government agencies are required to purchase from UNICOR those goods *and services* that UNICOR produces when they can do so at fair market prices." H.R. Rep. No. 864, 100th Cong., 2d Sess. 3 (1988) (emphasis added). This offhand assertion is entitled to minimal weight because the procurement preference provisions were not under consideration at the time — the purpose of the amendments was to authorize FPI to borrow funds. It is hardly probative of congressional consideration of the procurement preference issue.[14] In sum,

---

[13] ( . continued)

bag repair. Act of May 27, 1930, ch. 340, § 346, 46 Stat 391 (1930). We cannot infer from this failed proposal that Congress intended "products" to include "services." Indeed, the elimination of this explicit reference to a service only strengthens our conclusion that Congress did not give FPI any priority over services.

[14] That same report also lists FPI's operations, noting that it is engaged in "date [sic] and graphics including printing services to government agencies, signs, graphics products, and keyboard data entry systems." *Id.* at 4. The undisputed fact that FPI carries out such activities, however, is not material to the issue of whether it is entitled to a procurement priority for such activities.

we find nothing in the legislative history of section 4124 or related statutes that suggests FPI's interpretation of that section is correct.[15]

FPI asserts that failure to construe "products" to include services is contrary to the spirit of the statute and would undermine related provisions that require FPI to train inmates to perform skills they can use when they are released, 18 U.S.C. § 4123, and to diversify prison industrial operations, *id.* § 4122(b). Although interpreting section 4124 to reach services as well as products would no doubt enhance FPI's ability to achieve the directives of sections 4122 and 4123, we find no indication in the statute or legislative history that Congress believed a priority for services was necessary to achieve that result.[16] Where, as here, the statutory language is clear, FPI's contrary interpretation of its own enabling legislation need not be controlling. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 842 (1984).

LYNDA GUILD SIMPSON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[15] FPI also relies upon an Executive Order issued by President Roosevelt in 1934 setting up FPI This Order provided:

> The heads of the several executive departments, independent establishments and Government owned and Government controlled corporations shall cooperate with the corporation in carrying out its duties and shall purchase, at not to exceed current market prices, the *products or services* of said industries, to the extent required or permitted by law.

Exec Order No 6917, § 9 (1934) (emphasis added). This Order pointedly avoids imposing any requirement above and beyond the terms of the statute; that is the point of the phrase "to the extent required or permitted by law " Thus, since section 4124 provides only a preference for "products," the Order cannot be said to extend further. In fact, the Order's reference to "products *or* services" only confirms the inappropriateness of reading the statute's word "products" to *include* services

[16] We also disagree with FPI's assertion that our interpretation is contrary to the spirit of the statute's general goals of training prisoners and preventing them from sitting idle. *See* JMD Letter at 5. We are not persuaded that our interpretation prevents the FPI from fulfilling those goals These and other policy arguments can be presented to Congress with a request to amend section 4124.

349