119 F.3d 5
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ALPHA GROUP CONSULTANTS LTD; ALLAN D. SIMON & STEFANI R.
SIMON LIVING TRUST, individually and on behalf of
other similarly situated, Plaintiffs,
and
PENSION RESERVES INVESTMENT TRUST FUND OF THE COMMONWEALTH
OF MASSACHUSETTS, Plaintiff-Appellant,
v.
BEAR, STEARNS & COMPANY, INC., a Delaware corporation;
JERRY WEINTRAUB, Weintraub Entertainment Group;
KENNETH KLEINBERG, Defendants-Appellees.
ALPHA GROUP CONSULTANTS LTD; ALLAN D. SIMON & STEFANI R.
SIMON LIVING TRUST, individually and on behalf of
other similarly situated, Plaintiffs-Appellees.
and
PENSION RESERVES INVESTMENT TRUST FUND OF THE COMMONWEALTH
OF MASSACHUSETTS, Intervenor,
v.
JERRY WEINTRAUB, Weintraub Entertainment Group; BEAR,
STEARNS & COMPANY, INC., a Delaware corporation;
KENNETH KLEINBERG, Defendants-Appellees.
 Nos. 94-55737, 94-55738.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 16, 1995
 July 15, 1997.
 
 1
 Appeal from the United States District Court for the Southern District of California;No. CV-91-00143-IEG; Irma E. Gonzalez, District Judge, Presiding.
 
 
 2
 BEFORE: FARRIS, BRUNETTI, and KOZINSKI, Circuit Judges
 
 
 3
 MEMORANDUM*
 
 
 4
 This case is a consolidated appeal from two securities cases which were consolidated below. Appellants are 1) Alpha Group Consultants Ltd. (Alpha), as class representatives in a class action suit; and 2) Pension Reserves Investment Trust for the Commonwealth of Massachusetts (PRIT), who intervened in the case. The district court granted summary judgment in favor of appellee Bear Stearns, an investment banking firm. We have jurisdiction over this timely appeal. 28 U.S.C. § 1291. We affirm in part and reverse in part.
 
 I. BACKGROUND
 
 5
 Alpha brought this class action suit on behalf of all purchasers of Weintraub Entertainment Group (WEG) 13% Subordinated Debentures due 1999 with Warrants to purchase class A common stock during the period from January 23, 1987 to October 1, 1990. Alpha's class action suit was against Jerry Weintraub, Ken Kleinberg, Dennis Pope, and Bear Stearns alleging in its Third Amended Complaint violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b-5, 17 C.F.R. § 240.10b-5, RICO and pendant state law claims for fraud, breach of fiduciary misrepresentations, and California Corporations Code violations. PRIT intervened in the suit and filed an intervention complaint alleging federal and state securities laws violations, breach of fiduciary duty, fraud, negligent misrepresentation and omission, negligence, and breach of contract under federal, Massachusetts, New York, and California laws. At the time the district court considered the cross-motions for summary judgment or partial summary judgment, the only remaining defendant was Bear Stearns.
 
 
 6
 Appellants' claims arise out of WEG's January 1987 private placement of subordinated debentures and warrants to purchase WEG common stock. WEG gave to investors a Confidential Executive Summary, a Financial Model, and a Confidential Private Placement Memorandum (PPM). Bear Stearns drafted these documents. WEG went bankrupt in September 1990. Appellants claim that Bear Stearns made several misrepresentations and omissions in the disclosure documents.
 
 II. STANDARD OF REVIEW
 
 7
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). On review of a grant of summary judgment, the reviewing court must employ the same standard that governs the trial court: the reviewing court may affirm a grant of summary judgment only if no genuine issue of material fact exists and the moving party is entitled to prevail as a matter of law. May Department Store v. Graphic Process Co., 637 F.2d 1211, 1213-14 (9th Cir.1980); Fed.R.Civ.P. 56(c).
 
 III. WAIVED ISSUES FOR ALPHA
 
 8
 Appellant Alpha stated in the statement of the case of its opening brief the following:
 
 
 9
 Plaintiffs seek reversal of the district court's order granting summary judgment in favor of Bear Stearns on the claims arising from the misrepresentations and omissions regarding Weintraub's background and WEG's financing. Plaintiffs also seek reversal of the district court's grant of summary judgment on plaintiffs' RICO and state law claims, but due to the fact intensive nature of this case, plaintiffs can only address, within the appellate page limitations, the issues which best exemplify the district court's erroneous view of this case. Plaintiffs also wish to preserve their objection to the district court's Rule 56(f) Order limiting discovery. Because of the extensive discovery required in this complex securities fraud and RICO case, this Order severely prejudiced plaintiffs' ability to investigate the facts and present an opposition to the summary judgment motion.
 
 
 10
 [Alpha at 3]
 
 
 11
 Federal Rule of Appellate Procedure 28 provides: "The argument must contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." FRAP 28(a)(6). Issues raised in a brief that are not supported by argument are deemed abandoned. Acosta-Huerta v. Estelle, 7 F.3d 139, 144 (9th Cir.1993). Furthermore, an issue referred to in the appellant's statement of the case but not discussed in the body of the opening brief is deemed waived. Simpson v. Union Oil Co. of Calif., 411 F.2d 897, 900 n. 2 (9th Cir.1969), rev'd on other grounds, 396 U.S. 13 (1969).
 
 
 12
 Alpha never filed a motion to exceed the page limitations of the appellate brief. Alpha does not discuss in the body of its opening brief its RICO claim, state law claims, and the Rule 56(f) Order. Therefore, Alpha has waived these issues on appeal.
 
 IV. SECURITIES FRAUD
 
 13
 Alpha and PRIT argue that the district court erred by granting summary judgment. Rule 10b-5(b), enacted under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it unlawful "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). The elements of an action under 10b-5 are the following: 1) misstatement or omission; 2) of material fact, see McConigle v. Combs, 968 F.2d 810, 817 (9th Cir.1992) (defining material as there being a substantial likelihood that its disclosure would have been considered significant by a reasonable investor); 3) made with scienter, see Hollinger v. Titan Capital, 914 F.2d 1564, 1569 (9th Cir.1990) (holding that scienter is knowing or reckless conduct; and reckless conduct is a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it); 4) on which the plaintiff relied; and 5) that proximately caused damages. McConigle, 968 F.2d at 817. If one of these elements is missing, the claim fails. Paracor Finance Inc. v. General Electric Capital Corp., 79 F.3d 878, 884 (9th Cir.1996).
 
 
 14
 In a securities fraud action, "[m]ateriality and scienter are both fact-specific issues which should ordinarily be left to the trier of fact," although "summary judgment may be granted in appropriate cases." In re Apple Computer Sec. Litig., 886 F.2d 1109, 1113 (9th Cir.1989), cert. denied, 496 U.S. 943 (1990).
 
 A. EMPLOYMENT HISTORY OF WEINTRAUB
 
 15
 Alpha and PRIT alleged below that the PPM was deceptive because it failed to disclose that Weintraub had a reputation of spending large sums of money and that the controlling shareholder of United Artists (UA) fired him due to Weintraub's spending habits. They argue that the district court erred when it found that the omissions regarding Weintraub's track record were not material.
 
 
 16
 Weintraub served as Chairman of the Board, President and Chief Executive Officer of UA from November 1985 to April 1986. The PPM refers to Weintraub's tenure with UA and disclosed that he was at UA from November 1985 to April 1986. The offering for WEG was built on Weintraub's expertise in the entertainment business, and WEG was named after Weintraub. Clearly, Weintraub's experience and conduct at United Artists was directly relevant and material to the offering.
 
 
 17
 The district court held that the claims of omission and misrepresentation concerning Weintraub's prior employment history are premised essentially on gossip rather than competent evidence. The district court further stated:
 
 
 18
 the closest there is to direct evidence on this issue appears to be the deposition testimony of Stephen Silbert, the former chairman of the executive committee of UA. According to Silbert, Weintraub departed not for the reasons that plaintiffs give but because of a philosophical difference between Weintraub and the board of directors about whether UA should have a narrow focus on making movies (the Board's view) or should expand that focus to include music and concerts (Weintraub's view).
 
 
 19
 The district court then stated: "The remaining evidence submitted by plaintiffs on this issue consists of inadmissible hearsay such as newspaper articles and third-hand testimony or other evidence that does not support their allegations."
 
 
 20
 "It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181-82 (9th Cir.1988). Federal Rule of Civil Procedure 56(e) specifically provides:
 
 
 21
 [s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
 
 
 22
 Fed.R.Civ.P. 56(e).
 
 
 23
 Alpha and PRIT contend that Weintraub was fired because he had incurred an excessive overhead while he was at UA. Upon review of the record, we find that Alpha and PRIT failed to produce any admissible evidence to support its allegation that Weintraub was fired because he had incurred an excessive overhead while at UA. In fact, the evidence only shows that there was a conflict between Weintraub and UA, and that he left UA; it does not disclose whether he was fired or left voluntarily. The mere existence of a conflict between Weintraub and his former employer, UA, is not a material fact. Since the element of a material fact is missing, Alpha and PRIT's claim on this issue fails.
 
 
 24
 Appellant Alpha also contends that Bear Stearns failed to disclose Weintraub's unsuccessful films with which Weintraub had been involved. The PPM states: "Weintraub has produced such motion pictures as 'Nashville,' 'Oh God!,' 'Cruising,' 'Diner,' 'The Karate Kid,' and 'The Karate Kid, Part II'." This statement is not a material misrepresentation. It is simply a listing of some movies that Weintraub produced, not a listing of all of the movies that he produced. Alpha's argument is meritless. Summary judgment was appropriately granted in favor of Bear Stearns on these issues.
 
 B. BANK OF AMERICA CREDIT FACILITY
 
 25
 Appellants argue that there were material issues of fact relating to the disclosure about the bank line of credit. Appellants argue that the PPM misrepresented the extent of the completion of the agreement between WEG and Bank of America. The PPM included language such as "subject to syndication" and "[n]o amount has yet been drawn down under such arrangement." There was no misrepresentation about the bank line of credit. Appellants have failed to allege all elements of 10b-5. Summary judgment was properly granted in favor of Bear Stearns on this issue.
 
 C. DISTRIBUTION AGREEMENTS
 
 26
 Appellants argue that the description of the distribution agreements in the Executive Summary misrepresents when WEG would receive the guaranteed advances as well as the amounts of the advances. They argue that the Executive Summary indicated that the advances would be received before production based upon the following portion of the Executive Summary: "Through these arrangements, the Company will have guaranteed non-refundable pre-license agreements covering approximately 70% of the budget of each film prior to production." Appellants presented evidence that only a fraction of the funds was payable before the completion of filming.
 
 
 27
 In support of their motion for summary judgment, Bear Stearns presented the testimony of Thomas Flahie, who testified that in the motion picture industry the term "prior to production" should attach to the term "budget," rather than the term "covering." However, the plain meaning of the clause indicates that "prior to production" refers to when the funds would be received, rather than the percentage of funds to be received. Based upon the above as well as the significance such a representation would have on potential investors, we conclude that there was an issue of material fact whether the Executive Summary misrepresented when WEG would receive the guaranteed advances. We therefore reverse the district court's grant of summary judgment on this issue.
 
 D. FILM LIBRARY ACQUISITION
 
 28
 PRIT argues that there were material issues of fact relating to the disclosures about the film library acquisition. The district court found that the statute of limitations barred the securities fraud claim that arises out of WEG's acquisition of the Cannon film library. Alpha argues that the district court erred because the statute of limitations did not begin at the time that the debenture holders knew of the purchase of the library, but rather when WEG first defaulted on its debenture payments. This argument is meritless since the basis of Alpha's arguments below was that WEG and Bear Stearns failed to disclose the fact that WEG decided to purchase the Cannon film. The time that the statute of limitations began to run was at the time of the purchase of the library. This claim is time-barred.
 
 E. PRIT'S STATE LAW CLAIMS
 
 29
 PRIT argues that the district court erred in granting summary judgment on PRIT's state law claims in favor of Bear Stearns. PRIT claimed three state law causes of action: breach of fiduciary duty, breach of contract, and negligent misrepresentation. PRIT contends that the district court mistakenly concluded that Bear Stearns' state law duties were identical to its duties under the Federal Securities laws. PRIT has misstated the district court's conclusion. The district court stated: "Since PRIT's state law claims are based on the alleged misrepresentations and omissions that the court has already addressed, PRIT's motion for partial summary judgment is DENIED and defendant's motion for summary judgment on PRIT's claims is GRANTED." In other words, the district court held that since there were no misrepresentations or omissions, the state claims also fail.
 
 
 30
 The negligent misrepresentation claim was properly disposed by a summary judgment because there were no material misrepresentations. The breach of fiduciary duty claim fails because Bear Stearns owes no fiduciary duty to PRIT as to the WEG debentures. Bear Stearns had agreed separately to manage the investment of other funds. PRIT argues that there was a breach of contract because in Section 4.5 of the Debentures Agreement, the parties agreed that PRIT had solely relied on the information in the PPM, and as a result, Bear Stearns had implicitly warranted the accuracy of the statements of the documents. This argument is meritless. Summary judgment on PRIT's state claims in favor of Bear Stearns was appropriate.
 
 
 31
 AFFIRMED in part, REVERSED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3